THOMPSON HINE LLP
Rebecca Brazzano (#025412003)
335 Madison Avenue, 12th Floor
New York, New York 10017
212.908.3941 (Office)
212.344.6101 (Fax)
Rebecca.Brazzano@ThompsonHine.com

*Attorneys for Plaintiffs Alaven Pharmaceutical LLC and*
*Meda Pharmaceuticals Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY, TRENTON DIVISION**

| | |
|---|---|
| ALAVEN PHARMACEUTICAL LLC, a Delaware limited liability company, and MEDA PHARMACEUTICALS INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CREATIVE DESIGN INVESTMENTS, LLC, d/b/a CRAZYMASS, a Michigan limited liability company, <br><br> Defendant. | Civil Action File No.: <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Alaven Pharmaceutical LLC and Meda Pharmaceuticals Inc. ("Plaintiffs") by and through their undersigned attorneys, Thompson Hine LLP, as and for their Complaint against Creative Design Investments, LLC d/b/a CrazyMass ("Defendant"), hereby allege as follows:

**NATURE OF THE ACTION**

1.   This is an action for Federal Trademark Infringement under § 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), Federal Unfair Competition and False Designation of Origin under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), False or Misleading Advertising under §

1

43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Trademark Infringement and Unfair Competition under the Common Law of New Jersey, and Unfair and Deceptive Trade Practices under N.J.S.A. § 56:8-2.

## JURISDICTION

2.     The Court has subject matter jurisdiction over all causes of actions set forth herein based upon 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and pursuant to the supplemental jurisdiction of the Court under 28 U.S.C. § 1367.

3.     The Court has personal jurisdiction over Defendant for at least the following reasons: (a) Defendant has committed the unlawful acts complained of herein in the State of New Jersey and this Judicial District; and (b) Defendant regularly and continuously does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products marketed and sold in the State of New Jersey and this Judicial District, including the products forming the subject of the unlawful acts complained of herein.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

5.     Plaintiff Alaven Pharmaceutical LLC is a Delaware limited liability company with a principal place of business at 265 Davidson Avenue, Somerset, New Jersey 08873.

6.     Plaintiff Meda Pharmaceuticals Inc. is a Delaware corporation with a principal place of business at 265 Davidson Avenue, Somerset, New Jersey 08873.

7.     Defendant Creative Design Investments, LLC d/b/a CrazyMass is a Michigan limited liability company with a principal place of business at 2460 Neah Ta Wanta, Traverse City, Michigan 49686.

## THE CONTROVERSY

### The ANADROL Trademark

8. Plaintiffs develop, manufacture, market and sell a broad spectrum of prescription and non-prescription pharmaceutical products, including a steroid hormone product branded under the trademark ANADROL (the "ANADROL Product").

9. The ANADROL Product is indicated for the treatment of anemias caused by deficient red blood cell production. The ANADROL Product is supplied as a tablet for oral administration, with each tablet containing 50 mg of the steroid oxymetholone, a potent anabolic and androgenic drug.

10. The ANADROL trademark enjoys significant federal and common law trademark rights and protection.

11. Specifically, the ANADROL trademark is a fanciful or coined mark – it is an invented word that has no meaning, and is not found even in approximation in the English language or any other familiar language. Therefore, the ANADROL trademark is exceedingly strong and inherently distinctive.

12. Moreover, since at least as early as November 21, 1960, the ANADROL trademark has been and remains the subject of widespread, extensive and continuous use, advertising and promotion, in interstate commerce, on or in connection with the ANADROL Product.

13. Additionally, the ANADROL trademark is the subject of U.S. Registration No. 719,177, registered August 1, 1961, for "steroid hormones" in Class 005. U.S. Registration No. 719,177 is owned by Alaven Pharmaceutical LLC and used by Plaintiffs on and in connection with the ANADROL Product. U.S. Registration No. 719,177 was duly and legally issued, is

valid and subsisting, and is incontestable pursuant to 15 U.S.C. § 1065 (a true and accurate copy of the Certificate of Registration therefor is attached hereto as Exhibit A).

14. In sum, the ANADROL trademark, together with the immense goodwill associated therewith, is of inestimable value to Plaintiffs.

### Defendant's Unlawful Acts

15. In the 1980s, misuse of anabolic steroids for purposes of enhancing sports performance or body building became prevalent, leading to anabolic steroids being added to Schedule III of the Controlled Substances Act via the Anabolic Steroids Control Act of 1990, which also introduced stringent controls with higher criminal penalties for offenses involving the illegal distribution of anabolic steroids without a prescription. The ANADROL Product is listed on Schedule III of the Controlled Substances Act.

16. While anabolic steroids such as the ANADROL Product have become more difficult to illegally obtain, the desire for the muscle building benefits of the drug has not waned.

17. In recent years, Internet-based sales and marketing companies, such as Defendant, have developed schemes to trade off the goodwill of well-known steroid brands by intentionally adopting product names that are confusingly similar to anabolic steroid brand names, and under which they advertise and sell purported legal anabolic steroids and profit from the confusion and deception of the public who believe they are purchasing actual or pharmaceutically-equivalent anabolic steroids.

18. On its website, www.crazymass.com, Defendant states that it "is a leading manufacturer and supplier of RX-grade, hardcore anabolic supplements and legal alternatives to steroids", and that it manufactures and sells "bodybuilding anabolic supplements", "pharmaceutical grade legal anabolics" and "top-grade legal anabolic steroids". Each of these statements is used in connection with Defendant's advertisement and sale of purported

4

bodybuilding supplements, including a bodybuilding supplement branded under the trademark ANADROLONE (the "ANADROLONE Product"). (See, Exhibit B hereto.). Since October 2015, Defendant has advertised, sold and distributed the ANADROLONE Product in interstate commerce, including within the State of New Jersey and this Judicial District.

19. In an effort to equate the ANADROLONE Product with the ANADROL Product, Defendant falsely or misleadingly states, on its website, that its ANADROLONE Product (a) is "Legal Anadrol", (b) is "a potent [] anabolic formula [that] will increase the production of red blood cells and delay fatigue", (c) "mimics the anabolic effects of Oxymethalone [*sic*] (Anadrol) but carries none of the side effects", and (d) is a "[s]afe alternative to pure Anadrol anabolic [s]teroid" and for which "[n]o prescription[] [is] needed". Each of these false or misleading statements is used in connection with a picture of the ANADROLONE Product bottle, wherein the product bottle is strategically positioned such that the dominant "ANADROL" portion of the ANADROLONE mark appearing on the product label is emphasized and more prominently visible than the insignificant "ONE" portion of the ANADROLONE mark. The ANADROLONE Product is also supplied as a 50 mg tablet for oral administration -- a dosage and administration apparently selected by Defendant to complete its artifice of equating the ANADROLONE Product with the ANADROL Product. (See, Exhibit C hereto.).

20. On its website and in connection with the advertisement and sale of its ANADROLONE Product, Defendant includes a customer video testimonial, in which the customer states "Hey CrazyMass.com, this is [customer name omitted herein for privacy], I just wanted to tell you that I've been using your product ANADROL for five or six days now…".

21. On its website and in connection with the advertisement and sale of its ANADROLONE Product, Defendant refers to its product as "Anadrol Elite Series" or "Legal Anadrol". (See, Exhibit C hereto.).

5

22. The similarity of the ANADROL and ANADROLONE marks is apparent. Defendant's mark contains the entirety of Plaintiffs' ANADROL mark, rendering the marks nearly identical in appearance (a fact upon which Defendant has sought to capitalize, as evidenced by the picture of the ANADROLONE Product on Defendant's website (see, Exhibit C hereto)). The insignificant "ONE" portion of Defendant's mark lends to a pronunciation of the mark as "ANADROL ONE", and offers no distinction or is lost when the marks are spoken as evidenced by the Defendant's customer video testimonial; thus, the marks are similar in sound. Moreover, there is no apparent difference in meaning between the marks that might otherwise distinguish one from the other, thus amplifying the similarity of the marks. In short, Defendant's ANADROLONE mark is confusingly similar to Plaintiffs' ANADROL mark.

23. Defendant's use of the "Anadrol Elite Series" or "Legal Anadrol" marks on or in connection with its ANADROLONE Product is a wholesale adoption and use of Plaintiffs' ANADROL mark. Quite obviously, both the "Anadrol Elite Series" and "Legal Anadrol" marks contain the entirety of Plaintiffs' ANADROL mark, and are thus identical to Plaintiff's ANADROL mark. (The ANADROLONE trademark, the "Anadrol Elite Series" mark and "Legal Anadrol" mark are hereinafter collectively referred to as the "Infringing Marks".).

24. Defendant's intentional adoption and use of the Infringing Marks is a willful and deliberate appropriation of the goodwill in and to Plaintiffs' ANADROL Product and trademark, done for the illicit purpose of profiting from the confusion and deception of the public who believe they are purchasing the ANADROL Product or a pharmaceutical equivalent thereof.

25. A patient taking Plaintiffs' ANADROL Product may be caused to believe that the ANADROLONE Product is merely the over-the-counter pharmaceutical equivalent of Plaintiffs' ANADROL Product. The patient may, in lieu of taking Plaintiffs' ANADROL Product, begin taking Defendant's ANADROLONE Product under the misbelief that Defendant's product may

be used to effectively treat his anemic conditions. The resulting damage of confusion in this particular circumstance would be extremely severe; namely, as affecting the health of the patient. Public health and safety is threatened by Defendant's use of the Infringing Marks, and by Defendant's false or misleading statements made in connection with the advertisement and sale of its ANADROLONE Product, as pled herein, each of which seek to equate the ANADROLONE Product with the ANADROL Product.

26. Defendant's Infringing Marks so resemble Plaintiffs' ANADROL trademark as to be likely, when used on or in connection with Defendant's ANADROLONE Product, to cause confusion, mistake or deception among the relevant purchasing public -- especially so, given Defendant's false or misleading statements made in connection with the advertisement and sale of its ANADROLONE Product, as pled herein.

27. Defendant's Infringing Marks are identical or confusingly similar to Plaintiffs' ANADROL mark, and have caused and will continue to cause a likelihood of confusion, mistake, or deception by creating the false and misleading impression that Defendant's ANADROLONE Product originates with or is manufactured or distributed by Plaintiffs, or is affiliated, associated or connected with Plaintiffs, or has the sponsorship, endorsement or approval of Plaintiffs.

28. Defendant's use of the Infringing Marks deprives Plaintiffs of the ability to control the nature and quality of products provided thereunder, and thus places the valuable reputation and goodwill of the ANADROL trademark in the hands of Defendant, over whom Plaintiffs have no control.

29. Defendant's use of the Infringing Marks is without the consent, sponsorship or authorization of, or authorized affiliation with, Plaintiffs.

30. Defendant has used the Infringing Marks in, and has marketed, sold and distributed its ANADROLONE Product through, interstate commerce, including within the State of New Jersey and this Judicial District, and has done so with actual and constructive knowledge of Plaintiffs' prior use of and prior rights to the ANADROL trademark.

31. As a result of Defendant's unlawful conduct, Plaintiffs have been or are likely to be injured by a lessening of the goodwill associated with the ANADROL trademark.

32. As a result of Defendant's unlawful conduct, Plaintiffs have suffered and will continue to suffer damage to their business, reputation, and immense goodwill attendant to the ANADROL trademark.

33. Defendant's unlawful conduct has caused Plaintiffs irreparable harm, and such conduct will continue to cause irreparable harm to Plaintiffs unless enjoined by the Court.

34. Defendant's unlawful conduct has caused Plaintiffs monetary harm, and other damages in an amount to be proven at trial.

35. Defendant's unlawful conduct is intentional, malicious, willful, and wanton. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117.

### COUNT I
### Federal Trademark Infringement
### Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

36. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-35 hereof.

37. This cause of action arises under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

38. Defendant's Infringing Marks so resemble Plaintiffs' federally registered ANADROL trademark as to be likely, when used on or in connection with Defendant's ANADROLONE Product, to cause confusion, mistake or deception among the relevant purchasing public.

8

39. Defendant's Infringing Marks are identical or confusingly similar to Plaintiffs' federally registered ANADROL trademark, and have caused and will continue to cause a likelihood of confusion, mistake, or deception by creating the false and misleading impression that Defendant's ANADROLONE Product originates with or is manufactured or distributed by Plaintiffs, or is affiliated, associated or connected with Plaintiffs, or has the sponsorship, endorsement or approval of Plaintiffs, all in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. Defendant's use of the Infringing Marks, unless enjoined by the Court, will continue to cause a likelihood of confusion and deception of members of the public, and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by Plaintiffs' federally registered ANADROL trademark, all in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for which Plaintiffs have no adequate remedy at law.

41. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' federally registered ANADROL trademark, to Plaintiffs' great and irreparable injury.

42. Defendant has caused and will continue to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### COUNT II
### Federal Unfair Competition and False Designation of Origin
### Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

43. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-42 hereof.

44. This cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. Defendant's use of the Infringing Marks has caused and will continue to cause a likelihood of confusion, mistake, or deception by creating the false and misleading impression that Defendant's ANADROLONE Product originates with or is manufactured or distributed by Plaintiffs, or is affiliated, associated or connected with Plaintiffs, or has the sponsorship, endorsement or approval of Plaintiffs, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. Defendant's use of the Infringing Marks, unless enjoined by the Court, will continue to cause a likelihood of confusion and deception of members of the public, and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by Plaintiffs' ANADROL trademark, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for which Plaintiffs have no adequate remedy at law.

47. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' ANADROL trademark, to the great and irreparable injury of Plaintiffs.

48. Defendant has caused and will continue to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(a).

## COUNT III
## False or Misleading Advertising
## Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

49. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-48 hereof.

50. This cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Defendant has made and disseminated statements in commercial advertising or promotion that falsely or misleadingly describe or that otherwise misrepresent the nature, characteristics and qualities of Defendant's ANADROLONE Product and Plaintiffs' ANADROL Product, including Defendant's false or misleading statements made on its website in connection with the advertisement and sale of its ANADROLONE Product, as pled herein. Defendant's false or misleading statements on its website have been and continue to be made in interstate commerce in connection with the advertisement and sale of Defendant's ANADROLONE Product, which is sold and distributed through interstate commerce, including within the State of New Jersey and this Judicial District.

52. Defendant's false or misleading statements and other misrepresentations actually deceive, or have the tendency to deceive, a substantial segment of the public, and endanger the health and safety of the public. This deception is material in that it has or is likely to influence the purchasing decisions of the public.

53. Defendant's false or misleading statements and other misrepresentations injure or have the likelihood of injuring both the public and Plaintiffs, and have caused and will continue to cause a likelihood of confusion, mistake or deception, by creating the false or misleading impression that Defendant's ANADROLONE Product originates with or is manufactured or distributed by Plaintiffs, or is affiliated, associated or connected with Plaintiffs, or has the sponsorship, endorsement or approval of Plaintiffs, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendant's false or misleading statements and other misrepresentations, unless enjoined by the Court, will continue to cause a likelihood of confusion and deception of members of the public, and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by Plaintiffs' ANADROL trademark, all in violation of § 43(a) of the Lanham Act,

15 U.S.C. § 1125(a), for which Plaintiffs have no adequate remedy at law.

55. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' ANADROL trademark, to the great and irreparable injury of Plaintiffs.

56. Defendant has caused and will continue to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(a).

## COUNT IV
### Trademark Infringement and Unfair Competition Under the Common Law of New Jersey

57. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-56 hereof.

58. Defendant's acts constitute trademark infringement and unfair competition under the common law of New Jersey, and have caused and will continue to cause a likelihood of confusion to the irreparable injury of Plaintiffs unless restrained by the Court, and for which injury Plaintiffs have no adequate remedy at law.

59. Defendant acted and continues to act with full knowledge of Plaintiffs' prior use of and prior rights to the ANADROL trademark without regard to the likelihood of confusion of the public created by Defendant's activities.

60. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' ANADROL trademark, to the great and irreparable injury of Plaintiffs.

61. Because of Defendant's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable. At a minimum, however, Plaintiffs are entitled to injunctive relief,

an accounting of Defendant's profits, damages, and costs. Plaintiffs are further entitled to punitive damages in view of Defendant's willful, intentional, and malicious use of the Infringing Marks, done with specific intent to cause harm to Plaintiffs, with such punitive damages in an amount sufficient to deter Defendant from similar conduct in the future.

## COUNT V
## Unfair and Deceptive Trade Practices
## Under N.J.S.A. § 56:8-2

62. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-61 hereof.

63. This cause of action arises under the N.J.S.A. 56:8-2.

64. By reason of Defendant's acts as set forth above, Defendant has been and is engaged in unfair and deceptive practices or acts in the conduct of a business, trade or commerce in violation of N.J.S.A. § 56:8-2.

65. Defendant's use of the Infringing Marks and Defendant's false or misleading statements and other misrepresentations have caused and will continue to cause deception by creating the false and misleading impression that Defendant's ANADROLONE Product originates with or is manufactured or distributed by Plaintiffs, or is affiliated, associated or connected with Plaintiffs, or has the sponsorship, endorsement or approval of Plaintiffs.

66. As a result of Defendant's unfair and deceptive trade practices or acts, the public has been or is likely to be injured or damaged, and Plaintiffs have been injured and damaged, and, unless Defendant is enjoined by the Court, the public will remain susceptible to such injury and damage and Plaintiffs will continue to suffer such injury and damage.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that:

1. Defendant and all of its officers, members, directors, employees, agents, representatives, affiliates, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant, or in concert or participation with Defendant, be permanently enjoined from directly or indirectly:

(a) using the ANADROL trademark, or any other copy, reproduction, or colorable imitation, or confusingly similar version of the same, including the Infringing Marks, on or in connection with Defendant's goods and the advertising, promotion or sale thereof;

(b) using any trademark, service mark, trade dress, name, logo, design, or source designation of any kind, including the Infringing Marks, on or in connection with Defendant's goods or services, that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the trademarks, service marks, trade dresses, names, or logos of Plaintiffs, including Plaintiffs' ANADROL trademark; and,

(c) using any trademark, service mark, trade dress, name, logo, design, or source designation of any kind, including the Infringing Marks, on or in connection with Defendant's goods, that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs, or are in any way connected or related to Plaintiffs.

2. Defendant and all of its officers, members, directors, employees, agents, representatives, affiliates, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant, or in concert or participation with Defendant:

(a) be permanently enjoined from directly or indirectly making and disseminating statements in commercial advertising or promotion that falsely or misleadingly describe or that otherwise misrepresent the nature, characteristics and qualities of Plaintiffs' ANADROL Product or any of Defendant's products, including Defendant's false or misleading statements made on its website, as pled herein;

(b) be ordered to remove from Defendant's website, any affiliated website(s), and any other advertising and promotional materials, any and all uses of or references to Plaintiff's ANADROL Product and trademark; and,

(c) be permanently enjoined from directly or indirectly making any further use of or reference to Plaintiff's ANADROL Product and trademark, whether on Defendant's website, any affiliated website(s), any other advertising or promotional materials, or otherwise.

3. Pursuant to 15 U.S.C. § 1118 or the equity powers of the Court, Defendant be ordered to deliver up for impoundment and for destruction all products, samples, boxes, labels, inserts, packaging, signs, forms, receptacles, advertising, promotional material, printed materials, or other materials in the possession, custody, or under the control of Defendant that bear the Infringing Marks, or that are found to adopt or infringe Plaintiffs' ANADROL trademark, or that otherwise unfairly compete with Plaintiffs and their products and services.

4. Defendant be compelled to account for and pay to Plaintiffs all profits and other monies wrongfully derived by Defendant through its unlawful acts as pled hereinabove, together with legal interest from the date of accrual thereof.

5. Defendant be required to pay to Plaintiffs all damages and costs Plaintiffs have suffered by reason of Defendant's unlawful acts as pled hereinabove, together with legal interest from the date of accrual thereof.

15

6.      Plaintiffs be awarded enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, based on Defendant's willful and intentional conduct as pled hereinabove.

7.      Defendant be required to pay to Plaintiffs punitive damages in an amount to be determined by the Court for Defendant's willful and intentional conduct as pled hereinabove.

8.      Plaintiffs be awarded interest and prejudgment interest.

9.      Plaintiffs have such other and further relief as the Court may deem just and equitable.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

[Signature follows]

Respectfully submitted this 26th day of April, 2016.

/s/   Rebecca Brazzano
Rebecca Brazzano (#025412003)
**Thompson Hine LLP**
335 Madison Avenue
12th Floor
New York, New York 10017
212.908.3941 (Office)
212.344.6101 (Fax)
Rebecca.Brazzano@ThompsonHine.com

Ashish D. Patel (GA Bar No. 565894)*
Carrie A. Shufflebarger (OH Bar No. 81141)*
J. Christopher Fox, II (GA Bar No. 272527)*
**Thompson Hine LLP**
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
404.541.2900 (Office)
404.541.2905 (Fax)
Ash.Patel@ThompsonHine.com
Carrie.Shufflebarger@ThompsonHine.com
Chris.Fox@ThompsonHine.com

*Attorneys for Plaintiffs*
*Applications for *Pro Hac Vice* forthcoming